Mayer, Respondent, vs. Goldberg and another, Appellants.

*November 29—December 16, 1902.*

*Contracts: Construction: Traveling salesmen.*

A yearly contract of employment of a traveling salesman provided for monthly salary, expenses, and a commission on all sales over $24,000, and stipulated that either party might cancel the contract on giving ten days' notice, but, at the close of the ten days' period that "the accounts to be settled on the same basis as though the full period of the contract had elapsed." *Held*, that the salesman, on the termination of the contract before the end of the year, was entitled to commission on all sales in excess of $2,000 a month.

Appeal from a judgment of the circuit court for Milwaukee county: Eugene S. Elliott, Circuit Judge. *Affirmed.*

This is an action to recover $582.94, alleged to be due the plaintiff for the breach of a contract entered into between the parties September 30, 1899, wherein and whereby the plaintiff agreed to devote his entire time and attention from December 31, 1899, to December 31, 1900, as a traveling

salesman, to sell goods for the defendants in such territory as should be allotted to him, and in all respects to devote his whole time and attention to the interests of the defendants; that the defendants therein agreed to allow the plaintiff $100 per month during that period, and also during actual travels all necessary expenses, viz., $25 per week in cash, and *also all mileage and excess books.* The defendants agreed therein to allow the plaintiff "a commission of five (5) per cent. on all sales over $24,000," except on Angora and ice wool yarns, on which the defendants were to allow the plaintiff "a commission of two and one-half per cent. in cases where orders" should be accepted, the goods actually shipped and delivered, and the accounts collected by the defendants. The contract also contained this provision:

"Both parties to this agreement have the privilege to cancel this contract by giving ten (10) days' notice in writing, and at the close of said period the accounts to be settled on the same basis as though the full period of this contract had elapsed."

After alleging the business and relationship of the parties, and the making of such contract, the complaint alleges, in effect, that pursuant to said agreement the plaintiff entered into the employment as such traveling salesman December 31, 1899, and continued in such employment until June 20, 1900; that June 9, 1900, the defendants served upon the plaintiff notice that said contract with defendants as a traveling salesman was therewith canceled, and that from and after June 20, 1900, the plaintiff was discharged from the employment of the defendants, and inclosed their check for $100, the balance due the plaintiff for June, 1900, and that any other sums due and owing to the plaintiff from the defendants would be paid according to contract; that from December 31, 1899, to June 20, 1900, the plaintiff continued in the employ of the defendants, and, pursuant to the contract, sold $212.75 worth of merchandise known as "Angora

Ice Wool," and $23,558.63 worth of other merchandise; that
January 2, 1901, the defendants furnished to the plaintiff, at
his request, a statement showing the amount of goods sold by
him pursuant to the said contract, as mentioned; that the
plaintiff had received for his services so performed the sum
of $600.30, in cash and merchandise, and no more; that there
is due to the plaintiff from the defendants, pursuant to said
contract for services performed, and for commissions upon
the merchandise sold, as mentioned, the sum of $582.94, for
which the complaint prays judgment, together with costs of
this action.

The defendants answered by way of admissions, denials,
and counter allegations, to the effect that June 3, 1900, they
received from the plaintiff his resignation, to take effect Sep-
tember 1, 1900; that April 15, 1900, the plaintiff, in viola-
tion of such contract, and two other employees of the defend-
ants entered into an agreement to become partners in the
same kind of business as the defendants, and to sell and deal
in the same kind of goods and merchandise, to commence Sep-
tember 1, 1900, by reason of which the defendants suffered
damage in the sum of $500, and also alleged similar facts by
way of counterclaim.

The plaintiff replied to such counterclaim, denying each
and every allegation therein alleged.

May 17, 1901, the cause was referred to a referee, to hear,
try, and determine. At the close of the trial the referee found
the making of the contract, the services rendered, the amount
of sales made, the resignation of the plaintiff, and his dis-
charge by the defendants, as mentioned; (10) and also found
that the clause of the contract quoted was clear and unam-
biguous, and not subject to double construction; that by its
terms the defendants were only to pay a commission on sales
in excess of $24,000, irrespective of when the contract should
be terminated; (13) that the sales obtained through the so-
licitation and service of the plaintiff from December 31,

1899, to June 20, 1900, were only $23,776.38; (16) that the allegations of the complaint were true, except as to commissions, which were not sustained; (17 and 18) that the allegations of the answer as to the plaintiff's failure to devote his whole time to the business of the defendants were not sustained by the evidence; (19) that there is nothing due the plaintiff for commissions or otherwise; (20) that there is nothing due the defendants for failure of the plaintiff to comply with the contract. And as conclusions of law the referee found that the complaint should be dismissed, and that the defendants take nothing by reason of their counterclaim. On motion to modify and confirm such report of the referee, the trial court concurred, substantially, with the facts found by the referee, except in construing the clause of the contract quoted above so as to allow the plaintiff commissions on all sales in excess of $2,000 per month. In modifying such report, the late Judge ELLIOTT said:

"It is the duty of the court to put itself so far as possible in the position of the contracting parties, and from the language of the contract itself, the subject-matter, and the surrounding circumstances, to determine what they contemplated at the time of making the agreement. There is nothing vague or ambiguous or that calls for construction in the contract, except the phrasing of the stipulation which provides that when the employment is terminated within the year the accounts shall 'be settled on the same basis as though the full period of the contract had elapsed.' I apprehend that the words 'on the same basis' are equivalent to 'on the same terms' or 'conditions' or 'principle.' What were the 'terms' or 'conditions' of the full period? Evidently, $100 per month, and a commission upon sales in excess of $24,000. It is significant that the full period was twelve months, and that commissions were payable when the sales average more than $2,000 per month for such twelve months. The employment being terminated in less than the full period, the accounts were to be settled upon the same 'basis,' 'terms,' or 'conditions' as pertained to the full period; in other words, defendants were to pay the commissions in case the sales averaged

over $2,000 per month. Only by such a construction is it possible to give meaning to the words 'the accounts to be settled.' What accounts? Plaintiff's salary was payable monthly, and did not call for a settlement, so, unless the words 'the accounts to be settled' refer to commissions, they can refer to nothing. . . . Unless this stipulation was inserted for the benefit of plaintiff, it is wholly needless, since, except for it, defendants would not be obligated to pay any commission until sales had been made and collected exceeding $24,000. For the reason stated, I am brought to the conclusion that the parties contemplated and intended that plaintiff should receive a commission whenever his sales and the collections thereupon averaged more than $2,000 per month for the full term of the one year, or such part thereof as he continued in the employ of defendants under the contract. The findings and conclusions of the referee will be amended as moved by the plaintiff, and as amended will be confirmed, and judgment entered accordingly."

From the judgment entered upon such amended findings and conclusions, the defendants bring this appeal.

*Leopold Hammel,* for the appellants.

For the respondent there was a brief by *Turner, Pease & Turner,* attorneys, and *J. H. Turner,* of counsel, and oral argument by *W. J. Turner.*

CASSODAY, C. J. By the terms of the contract, the plaintiff was to have a salary and certain expenses. He was to have "a commission . . . on all sales over $24,000." The decision must turn upon the construction to be given to the additional clause of the contract quoted in the statement of facts, to the effect that, if either party canceled the contract by giving the notice in writing mentioned, then at the close of that "period the accounts" between the parties were "to be settled *on the same basis* as though the full period of this contract had elapsed." The plaintiff had been employed under the contract less than six months when the defendants canceled the same by giving the requisite notice. During that time his sales amounted to a little less than $24,000. The

defendants contend that he is entitled to no commissions, because his sales did not exceed that amount, even though they might have been double that amount had the plaintiff continued in the employment of the defendants to the end of the year. In support of such contention, counsel seem to rely on *Stern v. Rosenheim,* 67 Md. 503, 10 Atl. 221; *Atkins v. Keener,* 109 Ala. 143, 19 South. 402; *Thompson v. Saco W. P. Co.* 114 Mass. 159; *Kelly v. Carthage Wheel Co.* 62 Ohio St. 598, 57 N. E. 984. But in none of these cases did the contract contain any provision similar to the clause in question. The contract in the Maryland case is quite similar to what the contract in the case at bar would have been, had that clause been omitted,—with this difference: That the employer in that case reserved the right to terminate the contract at the end of six months if the services were unsatisfactory, and in that event the employee was "to receive no further compensation." It is well settled that in construing a contract all of its terms must be considered. *Jacobs v. Spalding,* 71 Wis. 177, 189, 36 N. W. 608; *Gibbons v. Grinsel,* 79 Wis. 369, 48 N. W. 255. The intention of the parties is to be gathered, if possible, from the language employed. *Id.; T. B. Scott Lumber Co. v. Hafner-Lothman Mfg. Co.* 91 Wis. 671, 65 N. W 513; *Braun v. Wis. Rendering Co.* 92 Wis. 247, 66 N. W. 196; *Mississippi R. L. Co. v. Wheelihan,* 94 Wis. 96, 98, 99, 101, 68 N. W. 878; *Wisconsin M. & F. Ins. Co. Bank v. Wilkins,* 95 Wis. 115, 69 N. W. 354. Thus it is held by the supreme court of the United States:

"In the interpretation of any particular clause of a contract, the court is required to examine the entire contract, and may also consider the relations of the parties, their connection with the subject-matter of the contract, and the circumstances under which it was made." *Chicago, R. I. & P. R. Co. v. Denver & R. G. R. Co.* 143 U. S. 596, 609, 12 Sup. Ct. 479, 36 L. Ed. 277; *Winona & St. P. L. Co. v. Minnesota,* 159 U. S. 531, 16 Sup. Ct. 83, 40 L. Ed. 247.

Under the adjudications cited, and many others which might be cited, the court is not at liberty to eliminate from the contract the particular clause in question, any more than it would be at liberty to add new provisions to the contract. The language of the late Judge ELLIOTT in construing the contract is given in the foregoing statement of facts. We fully concur in what he there said, and it need not here be repeated. The words, "at the close of said period the accounts to be settled on the same basis as though the full period of this contract had elapsed," manifestly mean what he held they do mean.

*By the Court.*—The judgment of the circuit court is affirmed.