## Skelly Oil Company, Appellant, vs. Peterson, Respondent.*

*May 2—June 30, 1950.*

---

* Motion for rehearing denied, with $25 costs, on September 6, 1950.

301

302

304

For the appellant there were briefs by *Benson, Butchart, Haley & Benson* of Racine, and oral argument by *Donald A. Butchart.*

For the respondent there was a brief by *Heft, Burgess & Brown* of Racine, and oral argument by *Carroll R. Heft* and *John R. Brown.*

Broadfoot, J.  The plaintiff contends that the trial court erroneously assumed that the use of the unexplained word

"deposit" in the distributor agreements required the return of the money deposited to the distributor; that the use of the word "deposit" requires an expression of the disposition to be made of the money deposited; that the absence of such expression makes the word ambiguous and the agreement incomplete; therefore, the conduct of the parties over the period of their business relationship should be the controlling factor in determining the disposition to be made of the money deposited with the plaintiff.

Plaintiff further contends that both parties understood that the distributor was to recover the cost of the utilization equipment, which was the amount deposited, as part of the installation charge; that the defendant had actually recovered the money in that manner and that the money so deposited was to be retained by the plaintiff; and that the trial court erred in refusing to consider the conduct of both parties as a demonstration of their understanding of the disposition to be made of the sums on deposit.

The record discloses that the defendant, after canceling his last contract, admitted liability to the plaintiff and mailed plaintiff a check, and that he made no demand for a return of deposits until after the commencement of this action. Plaintiff views this as an admission that both parties understood the plaintiff was to retain all deposits. The defendant claimed that he made no prior demand for a return of deposits because the equipments were in the hands of consumers and he was in no position to return them; that he was responsible for them until a new company agent was appointed to take over; that he then had made a constructive return of the equipments to the company as contemplated by the consumers agreements, some of which he introduced, and he testified to oral agreements by two company agents that his deposits would be returned when he ceased to represent the company.

In construing this contract the word "deposit" must be given its common and accepted definition. In that sense the

word "deposit" means property, usually money, placed in another's hands in trust or safekeeping or to one's credit. The most common usage of the word refers to money deposited in a bank, subject to the order of the depositor. In many commercial transactions deposits are made to cover the cost of equipment and containers, and in those instances the deposit is returned to the depositor upon delivery of the equipment or containers. With this common and accepted usage of the word "deposit," the contract is hardly ambiguous. If it is ambiguous, as plaintiff contends, it appears from the record that both the distributor and consumer agreements were executed upon printed blanks furnished by the plaintiff, and it is a recognized rule of law that a written contract should, if ambiguous, be construed most strongly against the party preparing it. *Schuhknecht v. Robers,* 192 Wis. 275, 212 N. W. 657; *Deree v. Reliable Tool & Machine, Inc.,* 250 Wis. 224, 26 N. W. (2d) 673. Where there is ambiguity in a contract the sense in which words therein are used is a question of fact. *Woodall v. Democrat Printing Co.* 250 Wis. 348, 27 N. W. (2d) 437. There was sufficient credible evidence in the record to sustain the finding of the trial court as to the meaning of the word "deposit."

The plaintiff finally contends that the defendant has recovered all the money deposited by him from the consumers through his charges for installation of the equipments, and that he is now estopped from unjustly enriching himself by now recovering it a second time. That argument could be applied with equal force to the plaintiff. The plaintiff, having reserved title to the utilization equipments and having loaned them to its consumer customers, would likewise be unjustly enriched if permitted to retain the deposits. The record discloses that some of the installation charges were sufficient to cover the cost of the equipments, and it is apparent that the consumer is the only one who may not be unjustly enriched.

Upon motion to review the defendant also claims that the trial court erred—in making the temporary injunction permanent, in applying the statute of limitations to contracts 159–1, 961–1, and 1131–1, and in allowing the premium paid for a surety bond to be taxed as part of the costs and disbursements.

As to the injunction, the defendant contends that upon the issuance of the temporary restraining order he accepted the court's determination of his rights and discontinued the practices complained of, and therefore the permanent injunction is unnecessary. The trial court held that the plaintiff was entitled to have its rights under its consumer contracts, which were known to the defendant, protected by a permanent injunction. The trial court was satisfied that because of the competition between the parties the situation had not so changed as to preclude the necessity for the permanent injunction. We affirm the action of the trial court in so doing.

The record discloses that the defendant operated for some time under the distributor agreements of his predecessors. Therefore, he contends, the six-year statute of limitations should not apply because all of the deposits were part of an open, mutual account, and because each of the distributor agreements was an instrument under seal. Each of the distributor agreements contained a provision as follows:

". . . it cancels and terminates as of the effective date hereof all prior existing contracts between the parties hereto for the distribution of merchandise as referred to herein."

Thus any cause of action under these contracts commenced with the termination thereof, and the trial court properly applied the statute of limitations thereto. The agreements were not sealed with the plaintiff's corporate seal nor with any scroll or device following the name of the distributor that might be determined to represent a seal. The agreements did contain the following provision: "Witness our hands and seals this the day and year first above written." This was not sufficient to constitute them instruments under seal.

In its bill of costs the plaintiff listed as a disbursement the premium paid upon a surety bond filed in connection with the issuance of the temporary restraining order. Sec 204.11, Stats., contains the following provision:

". . . Any party entitled to recover costs or disbursements in an action or special proceeding may include in such disbursements the lawful premium paid to such corporation for a suretyship obligation. . . ."

The allowance thereof was proper.

*By the Court.*—Judgment affirmed.